**C.G.O., Petitioner,**

v.

**R.A.O., Respondent.**

No. CN00–10822.

Family Court of Delaware.

Submitted: Feb. 26, 2002.
Decided: April 9, 2002.

Alfred J. Lindh, Esquire, Wilmington, for Petitioner.

Raymond J. Otlowski, Esquire, Wilmington, for Respondent.

## UPON A MOTION TO DISMISS PETITION FOR CUSTODY

WASERSTEIN, J.

Before the Court are a Motion to Dismiss filed by R.A.O. (hereinafter "Mother") and the Response thereto. At issue is whether this Court should dismiss the Petition for Custody filed by C.G.O. (hereinafter "Father"), regarding the parties' son, C.W.O. (d.o.b. 1/1/97), due to a lack of jurisdiction pursuant to the Uniform Child

Custody Jurisdiction Act (hereinafter "UC-CJA") codified at 13 *Del. C.,* § 1901 *et seq.* On January 7, 2002, a hearing was held in order to determine whether Delaware has jurisdiction over this case. In accordance with the UCCJA, which is in force both in Delaware and Pennsylvania, the Court determines that it does not have jurisdiction.

### SUMMARY OF FACTS

The parties are the biological parents of C.W.O., born on January 1, 1997. The parties agree that, from the time that C.W.O. was born until he was eighteen months old, they lived in Delaware. During part of this time, they lived on their own and, for the last few months in Delaware, they lived with Father's parents. Thereafter, in June of 1998, the parties relocated to 118 Fitzgerald Street, Philadelphia, Pennsylvania. Over a year later, and after signing a second one year lease for their apartment in Philadelphia, the parties separated in August of 1999. C.W.O. also has an older sister, K. G., who is the biological child of Mother, but not Father. C.W.O. considers K. his sister and she often goes with him on visitations with Father.

Mother has worked in Philadelphia for seven years. She commuted to and from her job in Philadelphia when she lived in Delaware. Mother testified that she considers her time of residence in Delaware as only temporary, and has always considered herself a Pennsylvania resident as her family lives there and she works in Philadelphia. Her parents live fifteen minutes away from her, in the state of New Jersey. Mother testified that she votes in Pennsylvania, even though she received a voter registration notice at Father's parent's address for November 7, 2000. She testified that she never saw this notification, until Father presented it at

trial. Mother admitted that she likes the child's Delaware pediatrician and has brought the child to see him. Otherwise, she stated, that she comes to Delaware for "court" purposes only.

Although Mother maintains her bank account in Delaware, she testified that she uses a Philadelphia branch to conduct her financial business. Mother has a Pennsylvania driver's license. Her vehicle is registered at her parent's home in New Jersey because her parents bought her the vehicle. The parties were married in Ocean County, New Jersey.

The parties' taxes were filed jointly in 1999 and 2000. Mother admits that she signed the 2000 tax forms, but she states that she never signed the 1999 Delaware tax return.[1] While Father received the tax refund in 1999; Mother received one half of the 2000 refund and none of the 1999 refund.

Father works in Chester, Pennsylvania. Conversely, he alleges that he lives in Delaware with his parents now and that he considered his time in Philadelphia as a temporary sojourn. Father still receives mail at the address in Philadelphia, which he shared with Mother previous to their separation. His current girlfriend apparently has lived at another Philadelphia address at least since December 2000, and lives there now.

Father acknowledged in a verified pleading before the Court of Common Pleas, Philadelphia County, that he "is an adult residing at 714 South 18th Street, Philadelphia, Pennsylvania, 19147." While Father indicated that he did not realize the legal significance of signing this form and that he was relying on his Pennsylvania attorney's advice, the fact is that he signed a legal document stating that he was living

---

1. This exhibit indicates that the parties paid a     Pennsylvania tax on line 10.

in Pennsylvania when he filed the Motion to Dismiss Complaint for Custody in the Philadelphia County, Court of Common Pleas. The copy of this document which has been provided to the Court is not dated. However, Mother's counsel in her Motion to Dismiss Petition for Custody dated March 7, 2001, paragraph 10, states that this was signed, "at least as of December 2000" and Father did not rebut this. Thus, Father listed the 18th Street, Philadelphia address more than a year ago. As a result, his current denial of his Pennsylvania residence in a sworn pleading and his belated assertion that he has been living, with his parents, in Delaware are not convincing.

Under an Interim Stipulation & Order from the Delaware Family Court, dated December 2000, the parties have shared custody of their child "nearly"[2] equally. It is undisputed that Father had the child a fraction more than Mother since Father has picked up C.W.O. each Thursday evening, despite the fact that his work schedule will not allow him to visit with C.W.O. then. C.W.O., who is already five years old, misses school each Friday and Father uses childcare for C.W.O. while he is at work. Thus, it appears that C.W.O. is often in the care of others during the few extra hours that he is with Father.

### FAMILY COURT CIVIL RULE 12

■ Father argues that, under Family Court Civil Rule 12(a), the opposing party must respond to a petition within twenty days.[3] He states that under Rule 12(b): "every defense, in law or fact, to a claim for relief in any pleading... shall be asserted in the responsive pleading thereto if one is required, except that [certain de-

fenses] may... be made by motion..." Significantly, the defenses that may be made by motion include both subject matter and *in personam* jurisdiction. According to Father, Mother has waived any *in personam* objection to this Court's jurisdiction, including any objection under the UCCJA. The Court concurs with Father in this regard.

Under Rule 12(h), however, only one of these two, the "defense of lack of jurisdiction *over the person*... is waived...if it is neither made by *motion* under this Rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course" (emphasis supplied). Thus, although subject matter jurisdiction is listed at subsection (b), it is not listed at subsection 12(h). In short, unlike *in personam* jurisdiction, subject matter jurisdiction is not waived if not asserted at the outset of the litigation.

Through her previous attorney, Mother argues that the Delaware Family Court was involved on December 7, 2000, but it issued an Interim Contact Order and not a permanent order. As noted in Mother's motion, dated March 7, 2001, paragraph 7, "On December 8, 2000, the parties were scheduled to be heard on Father's Motion for Interim Visitation [in Delaware]. Instead of appearing before the Court, the parties entered into a Stipulation and Order regarding visitation which became an Order of the Court on December 7, 2000. Since the Stipulation and Order did not address Custody, counsel for Mother signed the agreement for temporary visitation. Counsel then received a copy of Father's Motion to Dismiss in which he acknowledged he resides in Pennsylvania."[4] Thus, Mother argues that she con-

---

**2.** See Father's Motion for Interim Visitation at paragraph 3.

**3.** See Father's February 11, 2002, letter Memorandum, paragraph 4.

**4.** On December 11, 2000, Mother filed a Complaint for Confirmation of Custody in the

sented to a temporary visitation order, but she did not consent to jurisdiction over custody. This Court does not consider the fact that the prior order was temporary and on the subject of visitation to be decisive, but concurs with Mother to the extent that Mother challenges this Court's subject matter jurisdiction.[5] While, as Father argues,[6] she consented to *in personam* jurisdiction in the interim Stipulation and Order, neither she nor Father has the ability to confer subject matter jurisdiction on this Court.[7]

■ In fact, subject matter jurisdiction may be raised at any time prior to the entry of a final judgment.[8]

## SUBJECT MATTER JURISDICTION

### THE UNIFORM CHILD CUSTODY JURISDICTION ACT (UCCJA)

The statute, 13 *Del. C.* § 1903(1)—(4), in relevant part, reads:

A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This State:

a. Is the **home state** of the child at the time of the commencement of the proceeding; or

b. Had been the child's home state within 6 months before commencement of the proceedings and the child is absent from this State because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) It is in the **best interests of the child** that a court of this State assume jurisdiction because:

a. The child and his or her parents, or the child and at least 1 contestant, have a significant connection with this State; and

b. There is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships; or

(3) The child is physically present in this State and:

a. The child has been abandoned; or

b. It is necessary in an emergency to protect the child because he or she has been subjected or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) It appears that **no other state would have jurisdiction** under prerequisites substantially in accordance with subdivisions (1), (2) and (3) of this section, or another state has declined to

Court of Common Pleas of Philadelphia County, Family Court Division. Father then filed a Motion to Dismiss Complaint for Custody, which resulted in the order declining jurisdiction discussed at pages 11 and 15 of this Opinion.

**5.** Mother also mentions, at paragraph 9 of her March 7, 2001 Motion, that Delaware has no subject matter jurisdiction.

**6.** See Father's admission at the bottom of page 5 of his February 11, 2002 letter Memorandum. Father admits that Mother's "vol-

untary appearance is a submission to the *in personam* jurisdiction of the Court." Father's letter memorandum, however does not address the question of subject matter jurisdiction which is dispositive.

**7.** *See Bruno v. Western Pacific R.R. Co.,* Del. Ch., 498 A.2d 171, 172 (1985) (stating, "[t]he parties to an action may not confer subject matter jurisdiction by agreement." citing *Maxwell v. Vetter,* Del.Supr., 311 A.2d 864, 866 (1973)).

**8.** *See Shearin v. Church,* Del.Supr., 755 A.2d 390, at 390 (2000).

exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and it is in the best interests of the child that this court assume jurisdiction.

Except as otherwise specifically stated in this section, the physical presence in this State of the child, or of the child and 1 of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his or her custody (emphasis added).

Thus, there are four possible bases for a court to accept jurisdiction over an interstate custody controversy. Subsection (3) is not applicable in this case, as the child has not been abandoned and it is not an emergency situation.

## HOME STATE

### 13 Del.C. § 1903(1)(a)

■ The first basis of jurisdiction is the home state, which is defined as the state in which the child lived for at least six months immediately preceding the commencement of the action. Thus, in order for Delaware to be C.W.O.'s home state at the time of the commencement of this proceeding, he must have lived in Delaware for six months immediately preceding the commencement of this action.[9] Mother testified that C.W.O. was living in Philadelphia with her and visiting Father. Father testified that he had primary custody of C.W.O. because he had C.W.O. for more hours than Mother. Father presented the Court with detailed documentation listing how many hours each week C.W.O. spent with each parent. This documentation has

been kept since September of 1999, apparently in anticipation of litigation.

Father argues that C.W.O. spent the majority of his time in Delaware during the six-month period previous to the date of commencement of the proceeding and, thus, Delaware has jurisdiction as his home state. Mother argues that she and Father each had C.W.O. for approximately one half of the time and that C.W.O.'s residence is with her in Philadelphia. According to her, C.W.O. has resided continuously in Pennsylvania with Mother for the last three years. His sister, daycare providers, and his friends are in Pennsylvania.

Father's use of the word "temporary" is interesting. In his Memorandum to the Court regarding jurisdiction dated February 11, 2002, paragraph 2, he states that, "[s]ince June 30, 1998, to the present, Mother has kept a temporary residence in Philadelphia." He also alleges that the fourteen months that he and Mother lived in Philadelphia were *temporary*. Mother, however, provided a lease agreement and clearly established that she resides, works, conducts business and votes in Philadelphia. Conversely, Father also states that he sometimes "sojourns" at his girlfriend's residence in Philadelphia in his Response to Mother's Motion to Dismiss Petition for Custody, dated March 15, 2001. Given that Father considers the parties' joint fourteen months in Philadelphia *temporary* and that, although Mother has spent most of her life in Philadelphia, Father states that she only resides there *temporarily;* one is led to question Father's definition of "sojourns." In addition to his sworn admission to Pennsylvania residency, Father's disingenuousness here belies his assertion that he only visits his girl-

---

9. The period of time upon which the statute focuses our attention is the six months prior to commencement of this proceeding, November 17, 2000, or, from May 17, 2000 through November 17, 2000.

friend in Philadelphia and resides primarily with his parents in Delaware.

Mother also states that, by presenting documentation as to the precise number of hours C.W.O. spent in visitation with his Father during the six months in question, along with insisting that the car insurance not be transferred from Delaware, Father's family has played a significant and controlling role in this custody battle which they have orchestrated for a long time. Moreover, Mother argues, counting the number of hours that C.W.O. has spent in each state does not, in itself, serve the best interests of the child.[10] Mother is credible in her allegation that this jurisdictional argument has been driven by the paternal grandparents rather than the fact that Father is a Delaware resident. The fact that C.W.O. may have spent more hours or a greater amount of time in Delaware during the six months prior to the commencement of this action is not significant since Father's claim of residence in Delaware is not credible.[11]

In short, Father has not met his burden of proof that he resides in Delaware, which is a prerequisite for subject matter jurisdiction under 13 *Del. C.* § 1903(1)(a)-(b).[12] Father alleges that he resides with his parents in Delaware. However, as noted earlier, he signed a legal document stating that he resided in Philadelphia and now states that he works in Pennsylvania but only "sojourns" with his girlfriend in Philadelphia. Significantly, this is the same girlfriend and her address is the same address that Father listed in a verified pleading more than a year ago.

## BEST INTEREST OF THE CHILD
### 13 Del.C. § 1903(2)

■ Because concurrent jurisdiction is permissible under the UCCJA, the Court can determine whether the child has a significant connection to Delaware and, if so, whether it is in the child's best interests to litigate the matter in Delaware. The phrase "significant connection" is described as meaning maximum, and not just minimum, contact with the state, thus intended to limit jurisdiction rather than to expand it.

Father relies on *Giordano*[13] and asserts that the significant connection of the parties to Delaware requires this Court to retain jurisdiction under UCCJA 13 *Del.C.* § 1903(2), even though Delaware may not be the home state of the child under the UCCJA. However, Father disregards *Giordano's* acknowledgement that this is a question of subject matter jurisdiction.[14]

10. While 13 *Del. C.* § 1902(5) defines "home state" as "the" state where the child has lived for the preceding six months, this child has not lived in only one state during that time. Given the child's alleged presence in Pennsylvania slightly less than 50% of the time and in Delaware marginally over 50% of the time, the designation of one state over the other as "the home state" is misleading.

11. Moreover, 13 *Del. C.* 1903(4) states, "[e]xcept as otherwise specifically stated in this section, the physical presence in this State of the child, or of the child and 1 of the contestants, *is not alone* sufficient to confer jurisdiction on a court of this State...." (emphasis added.)

12. Although this is not a removal case, it is noteworthy that 13 *Del. C.* § 1903(1)(b) focuses on the child *"and* a parent" (emphasis added). In this case, Father, not his parents, is the party seeking custody and the claim of Delaware being the home state revolves around Father's, not his parent's residence in this state. *See also*, 13 *Del. C.* 1903(2)(a) which also stresses a child *and* his or her parents.

13. *Giordano v. Giordano*, Del.Fam., File No. CN94–4046, Keil, J., 1995 WL 788144 (June 30, 1995).

14. See *Giordano* at *1 where the Court begins with, "Respondent's Motion to Dismiss Petition for Custody for Lack of *Subject Matter* Jurisdiction" (emphasis added).

Moreover, *Giordano* merely states that "[w]hile Delaware generally prefers custody litigation to occur in the child's home state, *it is not required* to end its jurisdictional inquiry once it is determined that the child has a home state elsewhere" [15] (emphasis added). Thus, the Court may inquire further, but does not have to do so. In applying this standard, *Giordano* states, "the Court will determine whether the children have a significant connection to Delaware and if so whether it is in their best interests to litigate the matter in this State." [16] Therefore, after assessing the significant connection, the Court considers the best interests of the child.

In *Giordano* the Court considered the whole background of the case, pointing out that the last marital domicile was in Delaware. This, the lack of continuing contact with the home state,[17] and the children's ongoing contact with Delaware through visitation and family counseling, led the *Giordano* Court to find a significant contact with Delaware. Conversely, in the instant case, the last marital domicile was in Philadelphia. The child in the instant case has maintained contact both with Pennsylvania through Mother, and Delaware, through Father. But, since this Court finds that Father is not credible on the question of Father's residence, the child's contact with Delaware is primarily through his paternal grandparents.

On the question of the child's "present or future care, protection, training and personal relationships" [18] and the substantial evidence thereon, C.W.O. has connections to both Delaware and Pennsylvania.[19] C.W.O. stays with his Mother "nearly" equal time in Pennsylvania, goes to daycare in Pennsylvania, has a pediatrician in Pennsylvania, and has friends and family in Pennsylvania. He visits with Father in Delaware, and definitely visits his Father's parents here because they live in this state. C.W.O. has the pediatrician whom he has seen the most and his dentist in Delaware. Father takes him to see the dentist.

Despite the medical ties to Delaware, the Pennsylvania ties are stronger, especially since the most recent marital home was in Pennsylvania, he resides in Pennsylvania with Mother, attends daycare in Pennsylvania, has both a sister and friends in Pennsylvania and his maternal grandparents, with whom he is close, are fifteen minutes away from his Pennsylvania home. Father argues that he was never consulted when Mother enrolled C.W.O. in a Philadelphia daycare center, and rather than seek an emergency hearing, Father requested an expedited review of the custody matter.[20] The Court does not penalize Father because Mother enrolled C.W.O. in a nursery school in Pennsylvania, however, the child, through this contact, has sustained additional significant ties to the

---

**15.** *Id.* at *4.

**16.** *Id.*

**17.** The children in *Giordano* were in the home state for nine months, including the time of the filing of the petition, but neither of the parties, nor the children, resided there any longer.

**18.** 13 *Del. C.* § 1903(2)(b).

**19.** Mother also argues that it would be inconvenient and cost-prohibitive to decide the case in Delaware, as this would necessitate obtaining the physical presence of the daycare providers, friends, and doctors so that the Court can determine C.W.O.'s best interests. However, the reverse is true if the case is litigated in Pennsylvania. Moreover, the child's Philadelphia and Wilmington residences are not that distant from each other geographically.

**20.** Father was not consulted regarding C.W.O.'s enrollment in nursery school and, despite this, Father has, to his credit, shared the expense of C.W.O.'s attendance there.

area and it is in his best interest to acknowledge these ties. It will be up to the Court that ultimately decides this case to decide how important these ties are to obtaining and maintaining permanence in C.W.O.'s life.

The Court finds that Father's testimony that he lives with his parents is not credible. Delaware is not C.W.O.'s home state and, while he has a significant connection to Delaware, such connection also exists with Pennsylvania. Moreover, as noted previously, this Court is not required to assume jurisdiction merely because of the Delaware connection.

### NO OTHER STATE WOULD HAVE JURISDICTION

#### 13 Del.C. § 1903(4)

Although the State of Pennsylvania has declined jurisdiction, the matter was left open by the following language: [21] "Should the Delaware Court decline jurisdiction this petition may be reinstated by written request with a copy of the Delaware order within 60 days of this date." This Order is dated March 9, 2001. Since the Pennsylvania Court cannot bind the Delaware Court to act within a specified time frame,[22] it appears to this Court that the language is not intended to divest the Pennsylvania Court of jurisdiction unless Delaware acts within a specified time frame. It will be up to the Pennsylvania Court to determine whether a new Pennsylvania petition must be filed, with a new Pennsylvania filing fee, since apparently the old petition will not be automatically reinstated because more than sixty days have passed.

Delaware is free to decline subject matter jurisdiction based on the facts of this case. Given C.W.O.'s close connection to Pennsylvania, it is in his best interest that Pennsylvania retain jurisdiction.

### FORUM NON CONVENIENS

As stated in *Yost v. Johnson*,[23] "an underlying assumption of the *forum non conveniens* doctrine is that both the original court and the proposed new venue have subject matter jurisdiction to consider the case." The *forum non conveniens* analysis is only to be considered as a secondary inquiry after the Court determines primary subject matter jurisdiction. Because this Court has determined that it does not have subject matter jurisdiction, it is not necessary to address the question of *forum non conveniens*.

Arguably, however, subject matter jurisdiction is still possible under 13 *Del. C.* § 1903(2)(b) based on the significant connection and substantial evidence standards of the UCCJA. Therefore, the Court reviews again the child's best interests pursuant to 13 *Del. C.* § 1907 which provides:

. . . (c) In determining if it is an inconvenient forum, the court shall consider whether or not it is in the best interests of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his or her family or with the child and 1 or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, pro-

---

21. Mother asserts that Pennsylvania court put it on inactive status or on the suspension docket.

22. There is no such provision in the UCCJA.

23. *Yost v. Johnson*, Del.Supr., 591 A.2d 178, 182–3 (1991).

tection, training and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in § 1901 of this title.

. . . .

(e) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings or it may stay the proceedings upon the condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his or her consent and submission to the jurisdiction of another forum.

. . . .

*"1) If another state is or recently was the child's home state;"* Here, it appears that, if a choice is to be made between the two states, Pennsylvania is the child's home state given the Court's finding that Father is not credible in his assertion that he resides in Delaware. Moreover, since June 30, 1998, Philadelphia, specifically 118 Fitzgerald Street, has been C.W.O.'s domicile and he continues to reside there with Mother.

*"2) If another state has a closer connection with the child and his family or with the child and 1 or more of the contestants;"* Pennsylvania has a closer connection with C.W.O., because he also attends day care, and has friends and a sister in Pennsylvania. He has pediatricians in both states. His connection to the State of Delaware appears to be primarily through the paternal grandparents, and not the Father, as he works in Pennsylvania and

"sojourns" at his girlfriend's house in Pennsylvania.

*"3) If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;"* Again, C.W.O. has pediatricians in both states. Moreover, both locations are geographically close. Thus, if medical testimony is necessary, his pediatrician from Pennsylvania may testify and his Delaware pediatrician is not that far away. C.W.O. also attends nursery school in Pennsylvania.

*(4) If the parties have agreed on another forum which is no less appropriate; and*

This factor is not applicable.

*"5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in § 1901 of this title."*

§ 1901 Purposes of chapter; construction of provisions.

(a) The general purposes of this chapter are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on the wellbeing of such children;

(2) Promote cooperation with the courts of other states to the end that a custody decree will be rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of the child takes place ordinarily in the state with which the child and his or her family have the closest connection and where significant evidence concerning his or her care, protection, training and personal relationships is

most readily available, and that the courts of this State decline the exercise of jurisdiction when the child and his or her family have a closer connection with another state which has enacted the Uniform Child Custody Jurisdiction Act;

(4) Discourage continuing controversies over child custody in the interests of greater stability of home environment and of secure family relationships for the child;

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) Avoid the relitigation of custody decisions of other states in this State insofar as it is feasible;

(7) Facilitate the enforcement of custody decrees of other states;

(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child; and

(9) Make uniform the law of those states which enact child custody jurisdiction legislation.

(b) This chapter shall be construed to promote the general purposes stated in this section.

In this case, the dismissal of this Petition for lack of subject matter jurisdiction does not contravene the purposes of the statute. In fact, it promotes them. Although the Court of Common Pleas, Philadelphia County declined jurisdiction to permit Delaware time to act, it left open the possibility that the case would return to Pennsylvania.

This Court declines to exercise jurisdiction. The case is hereby forwarded to the Court of Common Pleas, Philadelphia County, Pennsylvania.

IT IS SO ORDERED.