**ADOPTION HOUSE, INC., Petitioner**

v.

**A.R. and J.V. Respondents.**

**Adoptions from the Heart, Petitioner**

v.

**K.S. and M.K. Respondents.**

**Nos. 02–07–04TN, 02–08–02TN.**

Family Court of Delaware,
New Castle County.

DATE SUBMITTED: Dec. 2, 2002.
DATE DECIDED: Jan. 30, 2003.

Harlan S. Tenenbaum, Esquire, for Adoption House, Inc.

Ellen S. Meyer, Esquire, for Adoptions from the Heart.

Christine K. Demsey, Esquire, for the Family Law Section Of the Delaware State Bar Association, Amicus Curiae.

COONIN, J.

### *NATURE OF THE PROCEEDINGS*

On July 9, 2002, Adoption House, Inc. (hereinafter "AHI") filed a Petition in this Court seeking to terminate the parental rights of A.R. and J.V. in their twin baby boys (hereinafter "Babies R") born May 5, 2002, in Media, Pennsylvania, for the purpose of freeing "Babies R" for adoption by an identified family also residing in Pennsylvania. On August 5, 2002, Adoptions From The Heart (hereinafter "AFTH") filed its Petition seeking to terminate the parental rights of K.S. and M.K. in their son (hereinafter "Baby Boy S") born May 16, 2002, in Lancaster, Pennsylvania, for the purpose of freeing him for adoption by an identified family residing in Delaware.

On August 27, 2002, this Court, *sua sponte* questioned the issue of the Court's

jurisdiction over the subject matter in termination of parental rights proceedings relating to Pennsylvania born children of Pennsylvania residents and, due to the similarity of issues, consolidated these two cases for briefing. The Family Law Section of the Delaware State Bar Association at the request of the Court filed a memorandum of law as *Amicus Curiae*. Briefing was completed on December 2, 2002.

This is the Court's decision with regard to the issue of subject matter jurisdiction in these two cases.

### FACTS

"AHI" is an adoption agency licensed by the State of Delaware to provide adoption related services. It maintains an office in Wilmington, Delaware. On July 9, 2002, "AHI" filed its Petition to terminate the parental rights of A.R. and J.V. in their twin sons, "Babies R" born May 5, 2002 in Media, Pennsylvania. The parents of "Babies R" are Pennsylvania residents who do not reside together. Both the birth mother and father signed voluntary consents to the termination of their parental rights in "Babies R" for the purpose of freeing their children for adoption by an identified Pennsylvania couple. The consents of both A.R. and J.V. were signed in Pennsylvania on forms provided by "AHI", forms which are substantially in compliance with those approved by the Family Court of the State of Delaware. In their consents, both A.R. and J.V. waived service of process and notice of any hearing to be held by "any Court of competent jurisdiction" and consented to the transfer of their parental rights to "AHI." The consent forms provided by "AHI" further provided that each parent agreed to be governed by and have the consent form interpreted under the Laws of the State of Delaware. Following signing of the consents and the twins release from the hospital, "AHI" took physical custody of "Babies R" and placed them in the Pennsylvania home of a pre-adoptive family previously approved by "AHI". The only connection that any of the parties have to the State of Delaware is that "AHI" is licensed by this State and maintains an office in New Castle County. The birth parents, babies and pre-adoptive placement family, in effect, the clients of "AHI," all reside in Pennsylvania.

"AFTH" filed its Petition on August 5, 2002. "AFTH", a non-Delaware corporation is, like "AHI," an adoption agency licensed by the State of Delaware maintaining an office in New Castle County. The child which is the subject of the "AFTH" Petition, "Baby Boy S" was born on May 16, 2002, in Lancaster, Pennsylvania, to Pennsylvania birth parents. The birth parents of "Baby Boy S" executed consents to voluntary terminations of parental rights on identical forms provided by "AFTH" each containing language identical in all significant respects to those signed by the birth parents of "Babies R." The consents of K.S. and M K., the parents of "Baby Boy S", were signed in Pennsylvania. The one notable difference between these two cases is that, unlike "Babies R," "Baby Boy S" upon his release from the Pennsylvania hospital of his birth, was placed by the agency in the home of a pre-adoptive resource family in Delaware, and was residing in Delaware at the time of the filing of the petition relating to his parents' parental rights.

### LAW

█ The Family Court is created by and derives its authority solely from statute. *M.T.L. v. T.P.L.*, Del.Supr., 414 A.2d 510 (1980); *Villarroel v. Villarroel*, Del. Supr., 562 A.2d 1180 (1989); *In the Matter of S.L., (date of birth 5/82), a Minor Child v. Sh.L.*, Del.Fam. Ct., 735 A.2d 433 (1999). Accordingly, in order for this Court to

exercise subject matter jurisdiction, the Family Court must be provided with an express statutory authority for conducting the proceeding. *Sanders v. Sanders*, Del. Supr., 570 A.2d 1189 (1990).

■ Unlike jurisdiction over the person, jurisdiction over the subject matter cannot be waived by the parties, *Sternberg v. O'Neil*, Del.Supr., 550 A.2d 1105 (1988); cannot be conferred by agreement of the parties, *Maxwell v. Vetter*, Del.Supr., 311 A.2d 864 (1973); *Bruno v. Western Pacific Railroad Company*, Del.Ch., 498 A.2d 171 (1985); nor can the Court acquire subject matter jurisdiction by estoppel. *Bruce E.M. v. Dorothea A.M.*, Del.Supr., 455 A.2d 866 (1983). Notwithstanding any language in the consent forms signed by the birth parents, only express statutory authority can enable the Family Court to entertain a Petition brought by a Delaware adoption agency to terminate parental rights of non-Delaware parents of a child born outside of Delaware.

The purpose of the Family Court is set forth in 10 *Del. C.* § 902(a).[1] A Family Court's general grant of jurisdiction in Termination of Parental Rights actions and the venue in which such proceedings are to be filed is set out in Section 1102 of Title 13 of the Delaware Code entitled "Jurisdiction and venue."[2] While Subsection (a) of Section 1102 is a general grant of jurisdiction, subsection (b), by contrast, does not confer jurisdiction at all, but merely designates the venue in which any such petition, if otherwise permissible, is to be filed and must be read in conjunction with Section 1104 of Title 13 which specifies who are the parties who have standing to file such a petition.[3] As licensed agencies, both "AHI" and "AFTH" are among the class of individuals authorized to file petitions under 13 Del. C. § 1104 provided that they file the Petition in the appropriate county of venue under 13 Del. C. § 1102(b). The dispositive issue in these cases is not, as petitioners argue, whether either of these agencies has standing to file the action nor whether the action was

1. § 902(a) of Title 10 of the Delaware Code entitled "Purpose; construction" provides as follows:

   In the firm belief that compliance with the law of the individual and preservation of the family as a unit are fundamental to the maintenance of a stable, democratic society, the General Assembly intends by enactment of this chapter that the Court shall have an original statewide civil and criminal jurisdiction over family and child matters and offenses as set forth herein. The court shall endeavor to provide for each person coming under its jurisdiction such control, care and treatment as will best serve the interests of the public, the family, the offender, to the end that the home will, if possible, remain unbroken and that the family members will recognize and discharge their legal and moral responsibilities to the public and to one another.

2. Section 1102(a) constitutes the general grant of jurisdiction of termination of parental rights matters and states:

   (a) The Family Court shall have jurisdiction of proceedings under this Chapter to terminate parental rights

   Subsection (b), the venue portion of this statute states:

   (b) A Petition for Termination of Parental Rights may be filed in the Family Court in any of the following counties:
   (1) The county in which at least 1 parent resides;
   (2) The county in which the organization having legal and physical care, custody or control of the child is located.
   (3) The county in which the child is located.

3. Section 1104 of Title 13 provides: A Petition for the Termination of Parental Rights may be filed by any of the following:
   (1) The Mother of a child;
   (2) The Father or presumed Father of a child;
   (3) Both parents of a child;
   (4) A blood relative of a child;
   (5) The Department or a licensed agency.

filed in the appropriate county, but rather whether the Court, having determined the Petitions to have standing, may exercise subject matter jurisdiction in these TPR cases under the particular facts herein presented.

On July 30, 2002, the Governor signed into law the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 13 *Del. C.* § 1901 which replaced the Uniform Child Custody Jurisdiction (UCCJA). The effective date of the new Act was September 1, 2002.[4] The UCCJEA is an updated and enhanced version of the UCCJA, designed to close exploitable loopholes allowing for the exercise of concurrent jurisdiction by the courts of multiple states, with the invariable result of inconsistent conflicting decisions. The mechanism created to resolve such conflicts is the clarification of the definition of "home state" as that phrase is used in determining the state of initial jurisdiction under both the UCCJA and the UCCJEA in order to eliminate competing states claims of initial jurisdiction. Under the newly enacted UCCJEA "home state" jurisdiction is given priority over "significant connection" jurisdiction.[5]

■ Under the statute formerly in effect, a determination as to whether Delaware was the "home state" for purposes of proceedings under the UCCJA has been held to constitute a determination of subject matter jurisdiction. *C.G.O. v. R.A.O.*, Del.Fam. Ct., 801 A.2d 938 (2002). In that case, applying the predecessor UCCJA, the Court balanced the ties of the parties between Delaware and Pennsylvania, determined that Pennsylvania had the greater interest in the proceedings and declined to find Delaware to be the "home state," thereby declaring Delaware to lack subject matter jurisdiction. The replacement of the UCCJA with the UCCJEA on September 1st of this year did not change the character of the statute. The determination of "home state" under the UCCJEA continues to be a determination of subject matter jurisdiction as it was under the predecessor UCCJA. The difference between the proceedings brought under the current and those brought under the former statute lies in the fact that under the predecessor, the UCCJA required the Court to balance the connection of the parties and interests to the competing states before determining whether it could proceed, whereas under the current statute, the UCCJEA specifically defines what constitutes the "home state"[6] and gives such a finding priority, without an initial weighing of the various parties connections to the competing states. It is therefore necessary, in order to determine whether this Court has subject matter jurisdiction to apply the specific provisions of the newly enacted UCCJEA to the facts of this case.

The provisions of the Delaware UCCJEA are expressly intended to include proceedings involving issues broader than what is traditionally thought of as "custody" matters. Proceedings to terminate parental rights and any order arising out of those proceedings are expressly includ-

---

**4.** 73 Del. LAWS, c. 426, § 3 provides that "this Act takes effect September 1, 2002."

**5.** For a detailed comparisons between the UCCJA and its successor, UCCJEA as well as the experience of states which now have a history in applying the use of the UCCJEA, one should consult "the ABC's of the UCCJEA: Interstate Child–Custody Practice un-

der the new Act" Patricia M. Hoff, 32 FAM.L Q 267 as well as; "Construction and Operations of Uniform Child Custody Jurisdiction Act," 100 A.L.R. 5th 1.

**6.** AHI in its brief concedes that the UCCJEA governs this proceeding. Neither AHI nor the *Amicus Curiae* discuss the applicability of either the UCCJA or UCCJEA.

ed within the prevue of the UCCJEA.[7] Because there has been no prior "custody" determination concerning "Babies R" or "Baby Boy S," each of these proceedings constitute "initial determinations" under 13 *Del. C.* § 1902(8)[8]. To have subject matter jurisdiction to make an "initial determination", the state must look to 13 *Del. C.* § 1920(a) as "the exclusive jurisdictional basis for making a child custody determination by a Court of this State."[9] This language may not be overlooked as the legislature has expressly determined it to be the sole basis upon which the Court can exercise subject matter jurisdiction. The circumstances under which this Court may exercise such jurisdiction is limited to cases in which it is determined that Delaware at the time of the filing of the Petition or within six months prior is the "home state" of the child, or if Delaware is not the "home state", circumstances in which the Courts of any other State which would have jurisdiction over the proceeding have chosen to decline jurisdiction in favor of Delaware as being a more appropriate forum, or circumstances in which there are no other states which may exercise such jurisdiction.[10]

---

7. 13 Del. C. § 1902 provides in relevant part:
   As used this chapter:
   (3) "The child custody determination" means a judgement, decree or other order of a court providing for the legal custody, physical custody or visitation with respect to a child. The term includes a permanent, temporary, initial and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.
   (4) "Child custody proceeding" means a proceeding in which legal custody, physical or visitation with respect to a child is an issue. The term includes a proceeding for a divorce, separation, neglect, abuse, dependency, guardianship, paternity, *termination of parental rights*, and protection from domestic violence, in which the issue may appear. The term does not include a proceeding including juvenile delinquency, contractual emancipation or enforcement under Subchapter III of this Chapter. (emphasis added)

8. § 1902(8) "Initial determination" means the first child-custody determination for which enforcement is sought under this Chapter.

9. 13 Del. C. § 1920(b)

10. **§ 1920 Initial child custody jurisdiction.**
   (a) Except as otherwise provided in § 1923 or this Title, a Court of this State has jurisdiction to make an initial child custody determination only if:
   (1) This State is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or a person acting acting as a parent continues to live in this state;
   (2) A Court of another State does not have jurisdiction under Paragraph (1) of this Subsection, or a Court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under § 1926 or § 1927; and
   a. The child and the child's parent, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other then mere physical presence; and
   b. Substantial evidence is available in this State concerning the child's care, protection, training and personal relationships;
   (3) "All Courts having jurisdiction under paragraph (1) or paragraph (2) of this subsection have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under § 1926 or § 1927; or
   (4) No court of any other State would have jurisdiction under the criteria specified in paragraph (1)(2) or (3) of this subsection.
   (b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this State.
   (c) Physical presence of personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.

■ The thrust of the arguments made by Petitioners and the *Amicus Curiae* are that first, as licensed agencies under 13 Del. C. § 1101(8) with authority to file Termination of Parental Rights proceedings in New Castle County under 13 Del. C. § 1102(b)(2), that they fall within the general grant of jurisdiction of this Court under 10 Del. C. § 921(3); second, Delaware is the "home state" for the purposes of entertaining this proceeding under the UCCJEA. The Court is not unmindful of the important role private agencies play in assisting would be adoptive parents in locating the child or children who fulfill their dreams nor in the fact that the geographic boundaries of the several States appear to impose obstacles on the adoption of such children. Indeed, one need only look at the numerous statutory enactments such as the UCCJA and the UCCJEA and the Interstate Compact for the Placement of Children, as a recognition of the importance of reducing the obstacles to the transfer of adoptable children across state lines. Without the services of licensed private agencies like the Petitioners, the obligation of meeting these noble objectives would fall on the already overburdened state agencies. It is for these considerations, among others, no doubt, that the Legislature has authorized the Department of Services for Children, Youth and their Families to license such agencies and to grant them status as petitioners under Chapter 11 Title 13 Delaware Code. But merely meeting the qualifications to be a licensed agency, as Petitioners' first argument suggests, does not grant this Court the authority to sever the parent/child bond and to determine the best interests of a child under circumstances where neither the child nor either parent have even minimal contact with this state. To exercise such jurisdiction this Court must look to the exclusive jurisdictional basis for taking such action, which, as of September 1, 2002 are the provisions found in the UCCJEA, Chapter 19 Title 13 Delaware Code. Unless the requirements of Section 1920(a) are satisfied this Court may not proceed to adjudicate these matters. The Court will therefore turn to Petitioners' second argument, that case law supports a finding that Delaware is the "home state" for purposes of making the initial determination under the UCCJEA.

■ Where the child is under the age of six months, such as the two cases before the Court, in order for Delaware to qualify as the "home state" the child is required to have lived from birth with either a parent or a "person acting as a parent."[11] Petitioner agencies clearly meet the definition of "parent[12] or of a person acting as a parent."[13] Since the birth parents placed "Babies R" and "Baby Boy S" with Peti-

---

11. 13 Del. C. § 1902(7)

12. 13 Del. C. § 1902(12)

13. 13 Del. C. § 1902(12) defines a "person" to mean "an individual, corporation, business trust, estate, trust, partnership, limited ability company, association, joint venture, government, government subdivision, agency or instrumentality, public corporation, or any other legal commercial entity".

13 Del. C. § 1902(13) defines a "person acting as a parent" to mean "a person, other than a parent, who:

a. has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence within one year immediately before the commencement of a child custody proceeding;

b. Has been awarded legal custody by a court or claims a right to legal custody under the laws of the State.

"13 Del. C. § 1902(14) defines physical custody" to mean "physical care and supervision of the child."

tioners under agreements granting them the right and obligation of providing physical care and supervision, Petitioners have the right to claim legal custody and therefore meet the definition of "person acting as a parent." Petitioners assert that Delaware is the "home state." "Home state," is defined in 13 Del. C. § 1902(7) with regard to a child less than six months at the time of the filing of the Petition as "the State in which the child lived from birth with its parent or person acting as parent." (emphasis added)

Since Petitioner agencies are artificial entities, they can act only through the individual persons carrying out its direction. In both of these cases, Petitioner agencies placed the newborns in pre-adoptive homes, in the case of "Babies R" a home in Pennsylvania, while in the case of "Baby Boy S," in a home in Delaware. The state in which the homes of their placement are located constitutes the state in which each child has "lived" within the meaning of § 1902(7). In the case of "Babies R", the State in which those children have lived from birth is the Commonwealth of Pennsylvania. While it is true that a Delaware adoption agency may, as have Petitioners, qualify as a "person acting as a parent," nevertheless, in order to qualify as the "home state," the child must additionally have "lived" in that state. The inclusion of the word "lived" in the definition of "home state" is not without purpose. It must be given its clear, unambiguous meaning. In the case of "Babies R", they have "lived" with an adoptive family under the care and control of "AHI" in the Commonwealth of Pennsylvania and Pennsylvania is the "home state." By contrast, "Baby Boy S," following his release from the hospital was placed by "AFTH" under its care and direction in the home of a family in Delaware. The State in which

"Baby Boy S" has lived from birth under the care and control of "AFTH" is the State of Delaware. Accordingly, in the case of "Baby Boy S," Delaware is the "home state."

"AHI" cites numerous decisions from other states in support of its arguments that Delaware is the "home state" of "Babies R" notwithstanding the fact that they have never lived here. The cases cited by "AHI" are clearly distinguishable from the case presently before this Court. In *State ex rel. W.A.*, 2002 WL 355970 (Utah Ct. App.2002), the acceptance of jurisdiction by Utah as the home state was based upon the fact that the child was physically in the custody of Utah authorities and living in the State of Utah at the time of the proceedings. Furthermore, that case involved the issue of jurisdiction over the person rather than subject matter jurisdiction. Similarly, in the *Adoption of "Baby Boy D.,"* 10 P.3d 212 (Okla.2000), where Mother had brought the child into Oklahoma and at some point thereafter abandoned the child in that state, it was held that Oklahoma was qualified as the "home state." In the cases cited by AHI, *E.H. v. State Dept. of Health and Social Services, Div. Of Family and Youth Services*, 23 P.3d 1186 (Alaska 2001); *Arkansas Dept. of Human Services v. Cox*, 349 Ark. 205, 82 S.W.3d 806 (2002); *In re: Nada R.* 89 Cal.App.4th 1166, 108 Cal.Rptr.2d 493 (2001); *In re: P.D.M.* 2001 WL 1503276 (Iowa Ct.App. November 28, 2001); *In re: Adoption of Copeland*, 43 S.W.3d 483 (Tenn.Ct.App.2000), each involve findings that the forum state was the "home state" based upon the fact that the children who were the subject of those proceedings had been residing in the forum states at the time of the commencement of the proceedings. Unlike the children in the cases cited by AHI, "Babies R" have no connec-

tion to Delaware, and it is the relationship of the child to this state, not the relationship of the agency to this state that is controlling when a court seeks to make an initial determination.

"Babies R" do not meet the criteria for "home state" determination while "Baby Boy S" does meet the criteria.[14]

### CONCLUSION

With regard to "Babies R" who were born in Pennsylvania and have continued to reside there under a placement by "AHI", a Delaware agency, Delaware is not the "home State" and may not exercise subject matter jurisdiction in this Termination of Parental Rights proceeding. Petitioner "AHI" may seek to terminate the parental rights of A.R. and J.V. in Pennsylvania. It is assumed that the Petitioner has standing to pursue such a Petition in Pennsylvania as an agency licensed by that state. If Petitioner is not an agency licensed in Pennsylvania to perform adoption related services, then this Court finds an even more compelling reason not to hear the case. Delaware Courts do not have any legitimate purpose in overseeing proceedings to terminate the parental rights of non-Delaware parents for the purposes of adoption of their children in other states which require the application of such other state's laws. The regulation of an adoption agency in the Commonwealth of Pennsylvania or any other state as well as the determination of what may

be in the best interest of a child born to parents in a sister state who continue to reside there appears in most instances to be best left to the province of the Courts of such other states, not Delaware. Accordingly, Petition 02–20570 is dismissed.

With regard to the Petition of "AFTH" to terminate the parental rights of K.S. and M.K. in "Baby Boy S," "Baby Boy S" has lived in Delaware under the care of "AFTH", a "person acting as a parent" which qualifies Delaware as the "home State" for the purpose of proceedings under the UCCJEA to terminate the parental rights of K.S. and M.K. Where the placement of the non-Delaware born child is in a pre-adoptive home in Delaware, Delaware has the right to exercise subject matter jurisdiction. Accordingly, the Court will proceed to consider Petition No. 02–24264.

**IT IS SO ORDERED.**

---

14. It should be noted that had this Court been called upon to apply the provisions of Uniform Child Custody Enforcement Act, the predecessor of the UCCJEA, which was in effect at the time of the filing of this action, the Court's conclusion would have been the same. Under the terms of former Chapter 19 Title 13, Delaware would have qualified as the "Home state" of "Baby Boy S." but would

not have qualified as the "Home state" with regard to "Babies R." Pennsylvania is an adoptee state of the Uniform Child Custody Jurisdiction Act, 42 Pa. C.S.A. §§ 5341–5366 which remain in effect there today. Pennsylvania has not adopted the UCCJEA. It appears that "Babies S" enable Pennsylvania to qualify as the "Home state" for the purposes

of its assumption of its jurisdiction if a proceeding were initiated there.