**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 7, 2015**

# In the Court of Appeals of Georgia

A15A0612. SLAY v. CALHOUN.

ANDREWS, Presiding Judge.

Justin Calhoun filed a Petition for Legitimation, Custody, Child Support, and Visitation (the "Petition") against April Slay in the trial court seeking, among other things, to legitimate and obtain joint legal and primary physical custody of K. C., Calhoun and Slay's daughter, who was born January 15, 2011. The trial court entered a temporary order, in which it concluded that it had personal and subject matter jurisdiction, legitimated Calhoun as K. C.'s father, and awarded Calhoun temporary legal custody of K. C. In its subsequent Final Order on Custody, Visitation and Support, the trial court granted the parties joint legal custody of K. C., granted Calhoun primary physical custody of K. C., granted visitation rights to Slay, and determined the parties' child support obligations. The trial court also entered a Final

Order on Subject Matter Jurisdiction concluding that the issue was moot and had previously been decided. Slay now appeals, arguing that the trial court lacked subject matter jurisdiction over the issue of child custody. For the reasons that follow, we affirm.

We review de novo the trial court's legal conclusion that it had subject matter jurisdiction in this case. *Delgado v. Combs*, 314 Ga. App. 419, 425-426 (1) (724 SE2d 436) (2012).

The record reflects that on April 16, 2013, Calhoun filed the Petition together with a Petition for Instanter Custody requesting immediate physical custody of K. C. on the ground that he feared for the child's health, safety, and welfare should Slay retain custody of her. In an order entered the same day, the trial court awarded immediate temporary custody of K. C. to Calhoun. Slay, pro se, filed an answer to the Petition and also moved to dismiss Calhoun's action for lack of *in personam* jurisdiction and improper venue. Following a hearing on April 30, 2013, which was not transcribed, the trial court entered its temporary order addressing the issues of legitimation and temporary custody. The temporary order ordered the Juvenile Court of Muscogee County to investigate the best interest of the child with respect to permanent custody. With respect to jurisdictional issues, the temporary order

2

concluded that the trial court had "jurisdiction over the parties and over the subject matter of this action."

After receiving the juvenile court's report, the trial court held a final hearing on March 19, 2014. Slay was represented by counsel, who argued at the beginning of the hearing that the trial court lacked subject matter jurisdiction over the issue of child custody under the terms of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), OCGA § 19-9-40 et seq., because Slay resided in Florida. In support of the motion, Slay's counsel examined Slay, who testified that she lived in Ponce De Leon, Florida and has always lived in Florida except for a period of time after K. C.'s birth. She stated that she moved to Georgia nine days after K. C.'s birth in Panama City, Florida in January 2011 but returned to Florida in August 2012. Slay's mother also testified that Slay moved back to Florida in August 2012. The trial court denied the jurisdictional motion.

Calhoun testified at the hearing that he was living in Bonifay, Florida with Slay when K. C. was born. After the child was born, Slay and K. C. moved to Columbus, Georgia to live with Calhoun's mother, but he could not join them immediately because he was on probation in Florida. Calhoun moved to Georgia once his probation was transferred to this state, and he and Slay lived with his mother and

3

stepfather for several months and then moved to a rental home. Calhoun testified that Slay went to Florida with K. C. for a visit and then called and stated that she was not coming back. He stated that once Slay returned to Florida, he and Slay worked out a visitation arrangement under which they would alternate keeping K. C. for two-week periods and would meet in Dothan, Alabama to pick her up or drop her off. According to Calhoun, Slay often would call a week early saying she could not take care of K. C., and he or his parents would have to meet her or drive down to Florida to pick up K. C. Calhoun testified that Slay often did not have stable housing in Florida and lived at times with her mother, a friend, her brother, and her boyfriend, who would sometimes kick her out.

Calhoun's mother testified that Slay and K. C. went to Florida for a visit in August 2012 and that after several weeks, Slay decided to stay. She testified that after Slay moved to Florida, each parent was supposed to have K. C. for three weeks at a time but that Slay was always calling after about a week and half and asking for someone to come get the child. She stated that she drove to Florida over a dozen times to pick up K. C. when Slay was unable to care for her. Calhoun's mother picked up Slay and K. C. in Dothan on March 19, 2013, and Slay stayed in Columbus for one

4

or two nights for a visit. Calhoun filed his Petition shortly thereafter while K. C. was still in Georgia.

Slay testified that her arrangement with Calhoun was that they each would have the child for alternating three-week periods but admitted there were times when she would call Calhoun to come get the child early. Slay and Calhoun testified that K. C. had received health insurance coverage under Medicaid and PeachCare in Georgia. When asked if she took the child to the doctor in Florida, Slay stated that she took K. C. to the emergency room once when K. C. had an ear infection. K. C. had her two-year checkup while she was in Georgia in February 2013. The trial court entered its Final Order on Custody, Visitation and Support and its Final Order Regarding Subject Matter Jurisdiction on April 8, 2014. The Final Order Regarding Subject Matter Jurisdiction stated that "the issue of jurisdiction is moot and was disposed of by [the temporary order]."

1. As an initial matter, we address Calhoun's argument on appeal that the UCCJEA does not govern the issue of subject matter jurisdiction in this case. Calhoun maintains that, instead, subject matter jurisdiction should be decided solely by reference to OCGA § 19-7-22 regarding legitimation petitions. We disagree.

5

The UCCJEA is a uniform act promulgated by the Uniform Law Commission in 1997 that has been adopted in all 50 states and the District of Columbia. *Angel B. v. Vanessa J.*, 234 Ariz. 69, 71-72 (316 P3d 1257) (Ariz. App. Div. 1 2014). One of its central purposes is to "[a]void jurisdictional competition and conflict with courts of other States in matters of child custody which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being." Unif. Child Custody Jurisdiction & Enforcement Act § 101, cmt. Georgia adopted the UCCJEA in 2001 to replace its predecessor, the Uniform Child Custody and Jurisdiction Act ("UCCJA"), "because, in application, imprecision in the prior act's language often allowed for the existence of concurrent jurisdiction over custody matters in multiple states, thereby fostering competition among jurisdictions and forum shopping by the parties." (Citation and punctuation omitted.) *Bellew v. Larese*, 288 Ga. 495, 496 (706 SE2d 78) (2011).

Pertinent here, OCGA § 19-9-61 (a) sets forth the circumstances in which a court of this state has jurisdiction to make an initial child custody determination. As discussed in further detail below, such jurisdiction is heavily dependent on the question of whether Georgia is the child's "home state." *Bellew*, supra, 288 Ga. at 498. OCGA § 19-9-61 (b) specifies that "[s]ubsection (a) of this Code section is the

6

*exclusive jurisdictional basis* for making a child custody determination by a court of this state." (Emphasis supplied.) A "child custody determination" under the UCCJEA "means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child," and "includes a permanent, temporary, initial, and modification order." OCGA § 19-9-41 (3). The trial court's Final Order on Custody, Visitation and Support in this case unquestionably constitutes a "child custody determination."

Calhoun nonetheless contends that we should look solely to OCGA § 19-7-22 to determine subject matter jurisdiction. Pursuant to OCGA § 19-7-22 (a),

> A father of a child born out of wedlock may render his relationship with the child legitimate by petitioning the superior court of the county of the residence of the child's mother or other party having legal custody or guardianship of the child; provided, however, that if the mother or other party having legal custody or guardianship of the child resides outside the state or cannot, after due diligence, be found within the state, the petition may be filed in the county of the father's residence or the county of the child's residence.

OCGA § 19-7-22 (f.1) goes on to provide that "[t]he petition for legitimation may also include claims for visitation, parenting time, or custody." Calhoun argues that the trial court had subject matter jurisdiction because he properly filed the Petition in

his county of residence under OCGA § 19-7-22 (a) and the inclusion of child custody claims was authorized by OCGA § 19-7-22 (f.1).

OCGA § 19-7-22 (a) governs venue rather than subject matter jurisdiction in a legitimation proceeding. See *Holmes v. Traweek*, 276 Ga. 296, 297 (577 SE2d 777) (2003) (holding prior version of OCGA § 19-7-22 (a) was invalid, as it conflicted with venue provisions of state constitution). Subsection (f.1) was added when OCGA § 19-7-22 was amended in 2005. Ga. L. 2005, pp. 1491-1492, § 1. Subsection (f.1) represented a departure from cases holding that custody could be adjudicated in a legitimation proceeding only if the mother consented; otherwise, the father was required to commence a separate proceeding after the judgment of legitimation was entered. See *Petersen v. Tyson*, 253 Ga. App. 431, 433 (559 SE2d 164) (2002).

In interpreting OCGA § 19-7-22 (f.1), we "shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Further, "[i]t is a well-settled rule of statutory construction that a statute must be construed in relation to other statutes, and all statutes dealing with the same subject matter are construed together and harmonized wherever possible so as to give effect to the legislative intent." (Citation and punctuation omitted.) *Hastings v. Hastings*, 291 Ga. 782, 784 (732 SE2d 272) (2012).

8

Applying these principles, we conclude that OCGA § 19-7-22 (f.1) effected a change in the prior rule of standing under which a putative father could not assert custody claims in a legitimation proceeding but did not create an exception to jurisdictional rules that apply in interstate custody cases under the UCCJEA. A contrary interpretation would undermine the uniformity of law among the states the UCCJEA seeks to achieve and its goal of eliminating jurisdictional competition. Further, the UCCJEA expressly exempts certain child custody proceedings from its requirements, namely adoption proceedings and proceedings pertaining to the authorization of emergency medical care for a child. OCGA § 19-9-42. If the General Assembly likewise wished to exempt legitimation proceedings involving child custody issues from some or all of the UCCJEA's provisions, we think it would have done so expressly.

2. Slay argues that the trial court did not have subject matter jurisdiction to address issues of child custody under OCGA § 19-9-61 (a) (1) because Georgia was not the child's home state. We find no error in the trial court's exercise of jurisdiction.

The trial court's Final Order on Subject Matter Jurisdiction determined that the issue was previously addressed in the temporary order issued after an April 30, 2013 evidentiary hearing. Although Slay's motion to dismiss did not raise the issue of

9

subject matter jurisdiction, the temporary order expressly found that the trial court had subject matter jurisdiction in the case. We do not have a transcript of the April 30, 2013 hearing, and we therefore "must assume that the evidence supported its exercise of jurisdiction." *Kuriatnyk v. Kuriatnyk*, 286 Ga. 589, 591 (1) (690 SE2d 397) (2010).

Further, the evidence at the final hearing was consistent with the trial court's earlier decision on the issue of subject matter jurisdiction. Pursuant to OCGA § 19-9-61 (a) (1), a court in this state has jurisdiction to make an initial child custody determination if "[t]his state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state." The term "home state" is defined in relevant part as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." OCGA § 19-9-41 (7). A "'[p]erson acting as a parent' means a person, other than a parent, who: (A) Has physical custody of the child or has had physical custody for a period of six

10

consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and (B) Has been awarded legal custody by a court or claims a right to legal custody under the law of this state." OCGA § 19-9-41 (13). "Physical custody," in turn, is defined as "the physical care and supervision of a child." OCGA § 19-9-41 (14).

Slay argues that she was K. C.'s only legal custodian until an order of legitimation was entered and that K. C. became a resident of Florida when she did. Slay is correct concerning her status as K. C's legal custodian. See OCGA § 19-7-25 ("Only the mother of a child born out of wedlock is entitled to custody of the child, unless the father legitimates the child as provided in Code Section 19-7-21.1 or 19-7-22.") But even assuming Slay became a resident of Florida in or around August 2012 as she contends, "home state" is not synonymous with the "residence or domicile of the parent having legal custody." *Harper v. Landers*, 180 Ga. App. 154, 157 (348 SE2d 698) (1986) (construing substantially similar definition of "home state" under UCCJA). Rather, the term "lived" in the definition of "home state" refers to the state where the child is physically present "without regard to legal residence." *Brenner v. Cavin*, 163 Ga. App. 694, 696 (295 SE2d 135) (1982); see also *Powell v. Stover*, 165 SW3d 322, 326 (Tex. 2005) ("The word 'lived' [in 'home state' definition

11

in UCCJEA] strongly connotes physical presence."). "If the General Assembly had intended that jurisdiction be based upon legal residence or domicile, it would undoubtedly have used these technical terms." *Brenner*, supra, 163 Ga. App. at 696. There was evidence at the final hearing that Slay frequently was unable to care for K. C. and called Calhoun or his mother to come pick up the child. Thus, the trial court was authorized to find that in the six months before Calhoun filed the Petition, K. C. spent more time with Calhoun in Georgia than with Slay in Florida. The evidence showed that K. C. received almost all of her medical care in Georgia. Under the circumstances, the trial court could have concluded that even though Slay moved to or resided in Florida, K. C. continued to live with Calhoun, a person acting as K. C.'s parent; K. C.'s absences to stay with her mother, who was unable to care for K. C. consistently, were temporary; and, accordingly, Georgia was K. C.'s home state for purposes of the UCCJEA.[1]

Based on the foregoing, we conclude that the trial court did not err in finding that it had subject matter jurisdiction with respect to the child custody issues raised in the Petition.

---

[1] Given our disposition in this division, we need not address Calhoun's argument that subject matter jurisdiction existed pursuant to OCGA § 19-9-64, which provides for temporary emergency jurisdiction.

*Judgment affirmed. Miller, J., concurs in judgment only.  Branch, J., concurs in judgment only as to Division 1.*