**CHRISTOPHER LEE GAYANICH, Plaintiff**
v.
**BRITTLEY DAWN GAYANICH, Defendant**

Family No. SX-16-DI-103

Superior Court of the Virgin Islands

Division of St. Croix

June 23, 2017

M<small>ARK</small> W. E<small>CKARD</small>, E<small>SQ</small>. St. Croix, USVI, *For Plaintiff.*

H.A. CURT OTTO, ESQ., St. Croix, USVI, *For Defendant.*

HINDS ROACH, *Judge*

## MEMORANDUM OPINION

(June 23, 2017)

**THIS MATTER** came before this Court on April 4 and 5, 2017 for a Jurisdictional Hearing pursuant to Mr. Christopher Lee Gayanich's Complaint for Divorce filed September 20, 2016.

The Court finds that the Virgin Islands has jurisdiction pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act (16 V.I.C. Ch. 4). However, this Court declines to exercise jurisdiction on the grounds that the United States Virgin Islands is an inconvenient forum and Oklahoma is the more appropriate forum for this proceeding.

## PROCEDURAL POSTURE

On September 20, 2016, Mr. Gayanich filed for divorce in the USVI. Thereafter, on October 3, 2016, Ms. Gayanich filed for divorce in Oklahoma. After Ms. Gayanich was served with notice of the suit in the USVI, she filed a Motion to Dismiss the USVI proceeding for lack of jurisdiction on October 28, 2016. In her Motion, Ms. Gayanich asserts that the USVI does not have jurisdiction under the Uniform Child-Custody Jurisdiction and Enforcement Act, and that the USVI is an inconvenient forum. On November 29, 2016, Mr. Gayanich submitted a Response in Opposition to Ms. Gayanich's Motion to Dismiss.

In accordance with 16 V.I.C. sections 127-133, which governs child-custody jurisdiction and enforcement and requires that courts formally communicate to resolve jurisdictional issues, this Court held a telephone conference on January 24, 2017 with the Honorable Thomas K. Baldwin from the 20th Judicial District in Oklahoma. The courts agreed that a jurisdictional hearing should go forward in the United States Virgin Islands court to determine:

 1. Whether the USVI has jurisdiction to determine custody issues pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act; and,

 2. Whether the USVI is an inconvenient forum pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act.

## FINDINGS OF FACT

The parties married in Oklahoma on June 1, 2013. There are two young children born of the marriage, C.B.G. (male, DOB: 4/11/14) and B.D.G. (female, DOB: 3/13/15), both born in Oklahoma.

The parties resided in Oklahoma until approximately January 28, 2016, when the parties, along with their two minor children,[1] moved to St. Croix.[2] Mr. Gayanich's family members are partial owners of the Chenay Bay Resort in St. Croix that he was hired to manage. The family moved into an apartment at Chenay Bay which had been renovated for their arrival. On March 22, 2016, Ms. Gayanich and the two children took a trip to Oklahoma. Mr. Gayanich joined them in Oklahoma on April 6, 2016. On April 10, 2016, the family of four returned to St. Croix where they remained until the end of August.

On August 27, 2016, the younger child flew to Oklahoma with Mr. Gayanich's grandmother, and Ms. Gayanich followed with the older child a few days later, on August 31, 2016. Both children flew back to St. Croix on or around September 19, 2016 with Mr. Gayanich's

---

[1] As of January 28, 2016, the oldest child, C.B.G., was one year nine months, and the youngest child, B.D.G, was ten and a half months.

[2] Through her testimony and pleadings, Ms. Gayanich asserted that the family did not move to St. Croix, rather it was merely a temporary trip. At the hearing, she presented the testimony of her mother who said that Mr. Gayanich represented to the family that the trip to St. Croix would be a temporary assignment to help get a resort up and running smoothly. According to Ms. Gayanich's father, Mr. Gayanich stated the trip to St. Croix was a temporary assignment to run the resort which would take approximately two to three months, after which the family would return to Oklahoma where Mr. Gayanich would run the resort remotely, making occasional trips back to St. Croix. Ms. Gayanich testified that she was told she could return to Oklahoma at any time.

 The Court is unpersuaded by this characterization of the move as a temporary trip. In contrast to the testimony presented by Ms. Gayanich, in the record is evidence that Ms. Gayanich's father announced to the couple's home church that "the kids are moving" to St. Croix. Additionally, Ms. Gayanich moved equipment necessary to continue her embroidery business to St. Croix and the Chenay Bay apartment was outfitted to accommodate her business. Furthermore, on social media, Ms. Gayanich said she was "completely moving" to St. Croix. Although much evidence was introduced to support the notion that this relocation was temporary, based on the entire record, this Court finds that the family relocated to St. Croix and no longer resided in Oklahoma as of January 2016.

grandmother. Ms. Gayanich remained in Oklahoma and continues to live in Oklahoma to date.

## LAW AND DISCUSSION

The Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA") was adopted by the USVI in 2005 and codified as 16 V.I.C. Chapter 4. The UCCJEA provides the basis for determining jurisdiction for child custody proceedings, as well as the criteria for assessing whether a forum is inconvenient.

### 1. Jurisdiction.

Title 16 V.I.C. section 127(a), which provides the basis for jurisdiction to make a child custody determination, states in pertinent part:

> (a) Except as otherwise provided in section 130, a court of this State has jurisdiction to make an initial child-custody determination only if:
>
>> (1) this State is the *home State* of the child on the date of the commencement of the proceeding, or was the home State of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
>>
>> (2) a court of another State does not have jurisdiction under paragraph (1), or a court of the home State of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under section 133 or 134, and:
>>
>>> (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
>>>
>>> (B) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;
>>
>> (3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under section 133 or 134; or

(4) no court of any other State would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)

(emphasis added).

Ms. Gayanich asserts that Oklahoma, rather than the USVI, is the home state of the two minor children. Mr. Gayanich contends that it is the USVI that is the home state of the children.

Title 16 V.I.C. section 116(7) which defines "home state" states in relevant part:

> "Home State" means the State in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period.

Ms. Gayanich asserts that the time the family spent in St. Croix was a temporary absence from Oklahoma. Mr. Gayanich asserts that the trips taken to Oklahoma from St. Croix during the six-month period before his filing of the USVI petition were temporary absences.

### a. Home State

 The Court's first inquiry is whether the USVI is the home state of the minor children. Each factor of 16 V.I.C. 127(a) need not be met, as these factors are written in the disjunctive.[3] Therefore, establishing the home state of the children is sufficient to establish jurisdiction.

As defined by 16 V.I.C. section 116(7), "home state" is the state in which the child lived for at least six months immediately prior the commencement of the custody proceeding.

██ It is necessary to clarify what is meant by "live" under 16 V.I.C. section 116(7). The USVI has not yet adopted a standard for "live" for the

---

[3] *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979) ("Cannons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise"); (*Friedman v. Eighth Judicial Dist. Court of Nev.*, 127 Nev. 842, 264 P.3d 1161, 1166 n.4 (Nev. 2011) (noting that when paragraphs are joined by "or" and not "and" they should be considered in the disjunctive).

purposes of a definition of home state, however other jurisdictions under the UCCJEA have provided persuasive guidance.[4],[5]

Most jurisdictions have adopted a physical presence standard rather than a domicile or residence inquiry, and have clarified that intent of the parents is not relevant in determining the home state of a child under the UCCJEA.[6]

■ In accordance with the prevailing case law, this Court declines to consider the intent of the parents in determining the home state. This Court likewise declines to adopt a domicile or legal residency inquiry. Instead, this Court is persuaded that the physical presence standard is the appropriate standard for establishing home state per 16 V.I.C. Chapter 4.

■ The dates during which the children were present in Oklahoma versus St. Croix are uncontested. Mr. Gayanich filed for divorce on September 20, 2016. Six months prior to this date (on March 20, 2016), the children were in St. Croix. In fact, the children arrived in St. Croix on

---

[4] *See Haynes v. Ottley*, 61 V.I. 547, 564-65 (2014) ("And when the Virgin Islands Legislature models a local statute after a statute adopted by another jurisdiction, 'judicial decisions interpreting [that] statute shall assist this Court in interpreting the same clause found in our local statute.' " (quoting *People v. Pratt*, 50 V.I. 318, 322 (V.I. 2008)).

[5] No *Banks* analysis is required in this interpretation because this is a statutory provision, and not an interpretation of common law.

[6] *See Ocegueda v. Perreira*, 232 Cal. App. 4th 1079, 181 Cal. Rptr. 3d 845, 850-52 (2015) (following the physical presence standard and rejecting consideration of a parent's subjective intent to remain in a particular state); *Slay v. Calhoun*, 332 Ga. App. 335, 772 S.E.2d 425, 430 (2015) (determining home state based on physical presence and declining to consider legal residence); *Dekinderen v. Dekinderen*, 2010 Mich. App. LEXIS 56, at *7 (Mich. Ct. App. 2010) (unpublished opinion) (finding physical presence test, which does not require intent, to be appropriate rather than residence or domicile); *Sajjad v. Cheema*, 428 N.J. Super. 160, 51 A.3d 146, 154 (Ct. App. Div. 2012) (finding consideration of legal residence or domicile unnecessary and interpreting "lived" as physical presence regardless of intent to remain); *Carter v. Carter*, 276 Neb. 840, 758 N.W.2d 1, 9 (2008) (quoting *Consford v. Consford*, 271 A.D.2d 106, 711 N.Y.S.2d 199, 205 (App. Div. 2000) (noting that the home state inquiry is separate and distinct from a legal residence determination)); *Powell-v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005) (establishing physical location as the central factor to be considered and rejecting a subjective intent inquiry); *In the Interest of S.A.H.*, 465 S.W.3d 662, 666 (Tex. App. 2014) (recognizing home state based on child's physical presence and not the legal residence of the parents); *In re Burk*, 252 S.W.3d 736, 739 (Tex. App. 2008) (finding a child's physical location to be the central factor in determining home state); *In re Tieri*, 283 S.W.3d 889, 893 (Tex. App. 2008) (recognizing home state is based on physical presence and declining to consider parental intent); *In re Brown*, 203 S.W.3d 888, 891 (Tex. App. 2006) (rejecting a subjective intent or totality of the circumstances test and acknowledging the adoption of a physical presence standard).

January 28, 2016, and remained in St. Croix until the date of filing, with the exception of two trips to Oklahoma.

Although the parties testified at length regarding their ties to the state of Oklahoma versus their connections to St. Croix, these factors are irrelevant in the determination of home state of the children.[7] The children were physically present in St. Croix for the six months prior to the commencement of Mr. Gayanich's Petition for divorce, therefore, barring any non-temporary absence, St. Croix is the home state of the children.

The remaining inquiry on this topic is whether the children's absences from St. Croix constituted temporary absences, such that they are counted towards the six-month time period establishing home state.

## b. Temporary Absence

Per 16 V.I.C. § 116(7), any temporary absences in the consecutive six-month period before custody proceedings are counted toward the period. The inquiry here is whether the children's absences from St. Croix are temporary within the meaning of the UCCJEA.

---

[7] Ms. Gayanich provided substantial evidence of lingering ties to Oklahoma as proof that Oklahoma remained the home state of the family while they were physically present in St. Croix, and that they intended to return to Oklahoma. Ms. Gayanich provided evidence of her cosmetology license in Oklahoma, which she renewed while living in St. Croix, the house in Oklahoma where the family lived, which was still furnished when they relocated to St. Croix, the children's medical records in Oklahoma, daycare enrollment beginning in August of 2016 in Oklahoma, a house under construction in which the family may have intended to live upon their return from St. Croix, a vehicle left in Oklahoma and refinanced during their stay in St. Croix, as well as her voter's registration card in Oklahoma, insurance cards directed to the Oklahoma address, drivers licenses maintained in Oklahoma, a bank account maintained in Oklahoma, and bills received in Oklahoma. Mr. Gayanich likewise provided evidence of ties to St. Croix. He noted that Ms. Gayanich shipped her embroidery materials to St. Croix to begin a business when she arrived, that at least one child saw a doctor in St. Croix, that the family shipped their Jeep to St. Croix, that they maintained car insurance in St. Croix, opened a bank account in St Croix, and shipped many household items to St. Croix. The Court finds that in spite of the numerous lingering contacts with Oklahoma, the family did intend to move to St. Croix. One can move to a new location and maintain ties to their previous home. This is especially reasonable when one's new home is an island to which furniture items cannot be driven, and one's previous home is on the property of family members, as was the case with Mr. and Ms. Gayanich. Nevertheless, the matter of intent to move is irrelevant in establishing the home state of the children.

This is an area of law which the USVI has not addressed, however, the numerous jurisdictions which have adopted the UCCJEA help clarify the meaning of temporary absence under the home state provision.[8]

■ Jurisdictions have employed various tests to determine what absences are temporary, however the intent of the parents is consistently considered.[9]

■ However, a parent's assertion regarding the duration of a visit may be discounted if the record demonstrates a move rather than a visit.[10]

■ After looking at the facts of the case as a whole, particularly noting the intention of the parents, this Court finds that the two trips to Oklahoma[11] during the six months immediately prior to the commencement of the proceeding were temporary absences from the home state of St. Croix. The Court finds from the parties' testimony that each trip was intended by the parents to be a temporary visit to Oklahoma. Neither trip was of indefinite duration, rather the children returned to St. Croix, as expected by the parents.[12]

Although Ms. Gayanich maintains that the trip to St. Croix was not a move, a temporary trip from Oklahoma, considering the record as a

---

[8] See footnote 4.

[9] *See In re Marriage of McDermott*, 175 Wn. App. 467, 307 P.3d 717, 726 (2013) (considering a number of factors including the parent's purpose and whether the parent in the claimed home state believed the absence to be temporary, whether the absence was of indefinite duration, and the totality of the circumstances regarding the absence of the child); *In re Parentage, Parenting, and Support of A.R.K.-K.*, 142 Wn. App. 297, 174 P.3d 160, 163 (2007) (finding a party's intent is relevant); *Ex parte Siderius*, 144 So. 3d 319, 325 (Ala. 2013) (quoting *In re Marriage of McDermott*, 175 Wn. App. 467, 307 P.3d 717, 728 (2013) (finding where both parents intend an absence of a child to be temporary, the absence must be counted toward the establishment of the home state).

[10] *See In re Marriage of Willson*, 2008 Cal. App. Unpub. LEXIS 5803, at *9 (Cal. Ct. App. 2008) (unpublished opinion) (finding that the parties had moved to Spain, despite the mother's assertion that it was a temporary two-month visit); *C.G.O. v. R.A.O.*, 801 A.2d 938, 943 (Del. Fam. Ct. 2002) (determining that a 14-month stay in Philadelphia was not temporary simply because the father asserted that it was, where the mother established that she resided, conducted business, voted, and held a lease in in the city).

[11] According to the record, the children were absent for approximately two and a half weeks in March and April, and again for approximately three weeks in August and September.

[12] Although it is unclear from the record whether Ms. Gayanich intended for the children's trip in August to be temporary, it is evident from the record that Mr. Gayanich intended the visit to be temporary, and this Court examines whether the parent "remaining in the claimed home state intended for the absence to be temporary." *In re Marriage of McDermott*, 175 Wn. App. 467, 307 P.3d 717, 726 (2013).

whole, this Court declines to consider the relocation to St. Croix a temporary absence from Oklahoma. The facts of this case demonstrate that Mr. and Ms. Gayanich intended moved to St. Croix from Oklahoma at the end of January 2016. Among other things, the record demonstrates that Ms. Gayanich moved the equipment to start an embroidery business in St. Croix, as well as household items from Oklahoma to St. Croix.[13] Although Ms. Gayanich eventually decided to move back to Oklahoma,[14] the actions of the parties in January 2016 and the subsequent months persuades this Court that the parties lived in St. Croix, and they were not simply taking a prolonged absence from Oklahoma.

Therefore, the Court finds from the parties' testimony and the full record, that the parties moved to St. Croix on January 28 2016, and, although the children were absent from St. Croix on two occasions, St. Croix remained the home state of the children, and the children's absences from St. Croix were temporary.

Accordingly, this Court finds that the USVI is the home state of the children within the meaning of 16 V.I.C. Chapter 4, and therefore the USVI has jurisdiction to determine custody.

## 2. Forum.

The parties dispute the issue of forum non conveniens. It is Ms. Gayanich's position that St. Croix presents an inconvenient forum for litigation, and the case is better situated in Oklahoma. Mr. Gayanich disagrees, positing that St. Croix is the children's home state and has a much greater interest in resolving the custody dispute.

This Court finds that, although St. Croix is the home state of the children, the USVI presents an inconvenient forum for the parties, and therefore this Court declines jurisdiction.

Per 16 V.I.C. section 133(b) an inconvenient forum is evaluated as follows:

> (b) Before determining whether it is an inconvenient forum, a court of this State shall consider whether it is appropriate for a court of another State to exercise jurisdiction. For this purpose, the court shall allow the

---

[13] For further analysis, see footnote 7.

[14] Ms. Gayanich appears to have relocated back to Oklahoma at the end of August 2016.

parties to submit information and shall consider all relevant factors, including:

>(1) whether domestic violence has occurred and is likely to continue in the future and which State could best protect the parties and the child;
>
>(2) the length of time the child has resided outside this State;
>
>(3) the distance between the court in this State and the court in the State that would assume jurisdiction;
>
>(4) the relative financial circumstances of the parties;
>
>(5) any agreement of the parties as to which State should assume jurisdiction;
>
>(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
>
>(7) the ability of the court of each State to decide the issue expeditiously and the procedures necessary to present the evidence; and
>
>(8) the familiarity of the court of each State with the facts and issues in the pending litigation.

██ In determining whether the USVI would be an inconvenient forum, this Court looked at all applicable factors and found three factors to be most relevant in this matter; that being, the length of time the children have resided outside this state, the relative financial circumstances of the parties, and the nature and location of the evidence required to resolve the pending litigation.

Regarding the length of time residing out of state: The children were both born in Oklahoma. The older child, C.B.G., was born on April 11, 2014, and the younger child, B.D.G., was born on March 23, 2015. The children lived in Oklahoma until the family moved to the USVI in January of 2016. As of the date of Mr. Gayanich's divorce filing, the children had lived in St. Croix for 236 days.[15] Although the children are still quite young (both under three years of age at the date of filing), they have spent a significant portion of their young lives in both Oklahoma and St. Croix. This factor does not militate in favor of either party.

---

[15] This includes the dates the children returned to Oklahoma for temporary visits.

Regarding the relative financial circumstances of the parties: Based on the testimony of the parties and the entire record, the Court finds that this factor favors Ms. Gayanich's position that Oklahoma is the more appropriate forum. Ms. Gayanich testified that she performs part time work,[16] and has no appreciable savings. Her parents have been financing the litigation thus far; however, the parents' resources have been depleted. Ms. Gayanich submitted documents demonstrating that the cost of a flight to St. Croix from Oklahoma is approximately $800 per person.[17] Although the record demonstrates that Mr. Gayanich makes approximately $48,000 per year, testimony from his family confirmed that he is able to rely on his relatives for financial assistance.

Regarding the nature and location of the evidence: This factor provides the most compelling rationale for this Court to decline jurisdiction. Both parties are originally from Oklahoma. Mr. Gayanich's extended family resides in Oklahoma, as does Ms. Gayanich's family. The parties were married in Oklahoma on June 1, 2013 and resided on property owned by Mr. Gayanich's family until their move to St. Croix. Family members, friends, and coworkers who witnessed the marriage from its inception until the move to St. Croix are largely in Oklahoma. This Court is persuaded that the majority of the witnesses of both parties, as well as the evidence necessary to litigate this proceeding lie in Oklahoma.[18]

## CONCLUSION

This Court finds that the USVI is the home state of the minor children, pursuant to 16 V.I.C. Chapter 4 and therefore has jurisdiction to hear the proceeding.

However, this Court declines jurisdiction because the USVI presents an inconvenient forum for the parties' litigation.

---

[16] Ms. Gayanich does part-time embroidery work, and also does cosmetology work in Oklahoma.

[17] Ms. Gayanich suggested that she would call approximately 25 witnesses from Oklahoma, however the Court does not presume that each of these witness would necessarily appear personally, rather than telephonically.

[18] Although Mr. Gayanich refers to the Court's ability to utilize flexible methods of taking testimony pursuant to 16 V.I.C. § 125(a) and (b), this Court finds that in this instance, both parties would be disadvantaged by proceeding with litigation in the USVI.

Thereby, for the reasons stated in the above Opinion, it is **ORDERED**:

1. That the USVI is the home state of the children pursuant to 16 V.I.C. Chapter 4.
2. That the Motion to Dismiss for Forum Non Conveniens is **GRANTED**, and this case hereby transferred to the 20th Judicial District in Oklahoma for further disposition.
3. That the USVI has declined jurisdiction, and therefore this matter as it relates to the USVI is **CLOSED**

**FURTHER ORDERED** that a copy of this Order be served on the parties as well as the Honorable Thomas K. Baldwin of the 20th Judicial District in Oklahoma.